Good morning and welcome to the Ninth Circuit Court of Appeals. It'll be just one minute. My name is Morgan Christen. I'm one of the judges on the Circuit Court. I'm delighted to be sitting in Portland this week with my colleague from Pasadena, Judge Wynn, on my right, your left, I suppose, and my colleague from Phoenix, Judge Hurwitz. I have to do a little bit of housekeeping to just make note on the record of cases that will will not be heard in oral argument today. One moment. This is the wrong list. No, I'll get it. Thank you. The first is case number 23-35536. Miljevic. Miljevic. I think it's Miljevic. Miljevic. We tried this several ways in chambers. I think it's Miljevic v. O'Malley. The second is 23-706, United States of America v. Groen. And that takes us to the first case on the oral argument calendar, which is 23-1021. Are that, that's who both of you are, I hope? Yes? Okay. This is Pascasio-Sanchez v. Garland. Can you tell me when you come to the podium how to correctly pronounce your client's name? Come on up. We're ready to hear your argument. Our client's name is Pascasio-Sanchez. Pascasio-Sanchez. Thank you. Go right ahead. Okay. Good morning. May it please the Court. My name is Destiny Soto and I represent the petitioners, Ms. Pascasio-Sanchez and her three children. I would like to reserve two minutes for rebuttal. Sure. Just keep an eye on the clock. We are requesting a remand of the decision of the Board of Immigration Appeals, which upheld the immigration judge's decision to deny the petitioners for asylum, withholding of removal, and protection under CAP. We make this request for two reasons, two main reasons. First, the immigration judge erred by, the immigration judge failed to correctly identify the petitioners' claim particular social groups and also failed to determine whether or not such groups were cognizable for purposes of withholding, for purposes of asylum and withholding of removal. Second, the BIA committed a procedural error by dismissing the petitioners' appeal based on an incorrect notion that the PSGs presented were new claims. Were there some new claims? I do not believe that there was, which I would like, I can get into right now if you want to, Your Honor. I think the salient point is wasn't there a claim before the IJ that was also submitted to the BIA? That's what you need, at least one that was submitted to the IJ and also submitted to the BIA. Yeah. Well, on its case, there were three that were submitted to the I, I mean, sorry, four submitted to the IJ that matched four submitted to the BIA, but the BIA is saying that there are three additional ones that were not, that were not submitted to the immigration judge and we believe that they were. So I want to ask you, I think what the government is arguing, that they can tell, tell me when they get up, is that even if the BIA mistakenly thought you had preserved the argument about the original PSGs, the IJ was quite correct in turning down your application based on the original PSGs? Assume that's right. Assume for a moment that the IJ made no error. Does that make a difference to us? Yeah, well, I'm sorry. Sure, sure. You, you argue two things. One, you say the IJ made an error in addressing the PSGs that you presented to the IJ. I must say I have a hard, harder time with that argument than your argument that the BIA didn't pay any attention to your original PSGs. So my question is, let's assume the IJ was right. We would, if we, if this had been preserved correctly all the way through, we would say the IJ didn't abuse its discretion. Does it matter or are you entitled to have this remanded simply because the BIA never addressed those groups? No, we wouldn't have it entitled to be remanded. You would not? Would not. Well, you would if the BIA failed to address the PSGs submitted. But, sorry. See, the BIA, you say, and I tend to, for purposes of this question, let me just tell you, I agree with you for purposes of this question, never addressed your three original PSGs. Let's assume they made a mistake in not addressing those three original PSGs. But then on the merits, if we were to look back at the IJ's decision, we would say the IJ correctly rejected the application. Can we do that or do we have to send it back to the BIA to do that? We would say that you have to send it back to the BIA to re-review. And that's because, why? Because. Because we can't affirm the BIA on a ground that they didn't rely on? Yes, Your Honor. Okay. It wasn't a trick question. I'm sorry, I made it that way. We're just trying to make sure that we understand your position. Yeah. And I think your position is that you had a PSG before the IJ, that the IJ ruled on, that the BIA didn't rule on. Is that correct? Yes, but, yes, on its face. But there's more that I wanted to explain to you. So I'm sorry for making it confusing. That's all right. Go ahead. Okay. So I would, so going into my second argument, which is that the BIA committed a procedural error in mistakenly believing that the new PSGs, that there were new PSGs. But isn't that your only argument? See, that's why I'm asking the question. The BIA did not affirm the IJ on the grounds that the IJ specified, which is that he didn't think you'd establish the requisite fear of further persecution or a nexus to the PSG. So the issue of whether the IJ erred in doing that is not in front of us. The only issue in front of us is whether the BIA erred in not addressing those three groups. Yes. Okay. And as to that issue, tell me why your appellate brief to the BIA preserved that issue for BIA review. Will do. So I want to say, so the PSGs, so there's three PSGs that the BIA said were new. Okay. I would like to start with the third PSG that they're addressing, which I believe mirrors the third PSG that was actually submitted to the immigration judge. Well, let me ask my question more specifically. Let's assume that you didn't raise those three new PSGs before the IJ. Did your appellate brief to the BIA argue that the original PSGs that you had raised to the IJ were incorrectly turned down by the IJ? Yes, but the reason why I'm telling you yes is because I believe that the new... And I'm asking you to put aside whether the new ones are sufficiently similar to the old ones. I thought I read your brief as saying he made a mistake by not granting the original three PSGs, and then it raised a bunch of new ones, which may or may not be appropriate. They never addressed the original ones. So I'm trying to figure out whether you agree with my premise in my question, that your appellate brief to the BIA really did reassert the original PSGs in their original form, not in a transmogrified form, but in their original form. Yes. And where in your brief does it do that? Where in the brief do we address the... Sorry, where in the brief do we address the new forms? No, not the new ones, the old ones. The old ones? In your brief to the BIA, I think it says the IJ made a mistake by not granting us relief based on the original three PSGs. And if it did say that, then it seems to me the BIA made a mistake by not addressing them. So I just want to make sure that my reading of your brief is correct. Yes. And in the brief it talks about, and when it's talking about those mistakes that the IJ made, it cites to Z of E holder matter of EAG and matter of ASEG, which were the arguments that the immigration judge used to dismiss the PSGs, the original PSGs. And that's where we're trying, that's where we bring that up. Thank you. Do you want to reserve? Oh, before you run completely out of time, I just want to raise an issue for you to think about. You may already know the circuit has a robust mediation program. I don't know if you've reached out to talk to government counsel about that, but it may be worth exploring. And so the parties can confer and let us know if you're interested in putting this case in the mediation program. That's not a question for you to answer right now. I'm going to let you reserve the remainder of your time. We're just giving you an opportunity to think about that. And when you come back, you'll have the remaining time. Okay? Okay. Thank you. You bet. We'll hear from government counsel, please. Good morning. May it please the court. Paul Fiorino for the Attorney General. To get to Judge Hurwitz's question in the petitioner's brief to the board, they, the board held that they made a passing reference to the first three PSGs that they raised before the IJ, but didn't defend them and instead raised articulated three more or three or four. That's what I'm having trouble with with the BIA decision. I'm looking at, I was asking your friend to identify it, but I've got page 18 of ER 18 I think it is. It's page 12 of their brief to the BIA. It seems to identify the groups and then make a decision. Make an argument right after it about why the IJ erred in not, in not granting relief. He may not have erred, but that's not in front of us. And then it's not until the next page that these three new groups appear. Now, whether or not they're just meant to support the notion that the original three ones existed or not, I don't know, but I'm assuming the BIA is correct in not addressing the new three. But why doesn't page 12 of their brief sufficiently preserve the issue? Well, they just mentioned them. They said the PSGs include immediate family members of police officers. They go on to cite case law describing why this is a PSG. Yeah. Well, the case law that they cite is more or less just a general discussion. It may be a terrible brief. That's a separate issue, but it does argue that these three PSGs should have been recognized, should have been given rise to relief. It's not forfeited just because the lawyer doesn't make the argument in elegant terms, is it? Well, the real question is we're looking at what the board decided, right? Because we're looking at the board's decision. That's the scope of the court's review. We're looking at whether the board had an opportunity. Was it, was it fairly teed up, right? Was it fairly teed up? I don't think it was. Why not? Because as I was, as I was explaining to Judge Hurwitz, they mentioned the groups, then they talk about the law. They talk about the principles that would apply to determine whether it is a group. Well, well, but they don't refer to the groups themselves. They don't say why those groups are valid. And remember what the IJ said. The IJ said, didn't make any ruling on the cognizability of those groups. The IJ simply said, it was essentially a nexus finding. You're right, Your Honor. The BIA didn't say anything about nexus. Didn't need to. So, well, but counsel, if you could, I think my point is we can't rely on that and you're not asking us to rely on nexus, are you? No. Okay. Sweet. Okay. Go ahead. Well, the IJ said there's no, sorry, Judge? Let me add to that point because I see this brief, whether it's a great brief or not, it's another matter, but I see this brief as going beyond just merely mentioning the groups that were raised before the IJ, so that's on page 18. And so your argument is there was just a passing reference to the group. The problem is that these groups, as well as the new groups raised, are very interrelated. And I don't see anything about the arguments that would preclude that analysis being applied to the groups raised before the IJ, as well. Well, I think that the different groups are very different. And as we point out on page 15 of our brief, the, you know, the usage of different words is not to be ignored. You know, when you choose different words to describe something, you know, it's a canon of construction. When you use different words, it's presumed to mean something differently. We don't analyze this as we do a statute, counsel. So can you analyze how are these meaningfully different? If you could circle back to Judge Wynn's question. I have the same question. How are they meaningfully different? Well, we explain it in page 15 of our brief. On the one hand, you have individuals, and on the other hand, you have police officers. They're very different in scope. They have one reference is to family members, one reference is to immediate family members. My question is slightly different. Because on page 19 of the brief before the BIA, after the listing of all of the groups, I'm looking at paragraph 2, it says there's no doubt that respondents belong to the PSGs noted above. So that to me suggests that all of the arguments that follow apply to all the groups raised, including the groups mentioned on page 18, which were raised before the IJ. So I think, why isn't that sufficient to let the BIA know that all of these groups are at issue and that you have to specifically discuss them? And if you don't, then we remand for a do-over. Well, if the Court finds that this issue is sufficiently preserved, that the first three PSGs were sufficiently preserved in this brief, which I agree is not a very good brief, then you would have to remand, okay? But our position is, and we're defending what the Board decided, that it appeared to the Board that they abandoned their first three PSGs, and you may take a different view, that they abandoned their first three PSGs, reformulated some new ones, and when the Board was correct in declining to consider those. So our position is that the Board did not legally err when it interpreted the Petitioner's Board brief to abandon those first three and advance the three new ones. I'm sorry, I didn't mean to interrupt you. If this one paragraph at the top of what's ER 19 consistent with, you know, then it raises the new groups. If that were gone, all the arguments that follow apply to the original groups, don't they? Because they deal with why being a member of a family and suffering persecution at the hands of a gang would qualify for your PSG. But it seems to me that the only, the discord here comes from that one paragraph. That seems to reformulate the groups. But all the arguments that they raised would apply to the original groups if they opposed, wouldn't they? Yeah. You see, it's not clear. We all agree that it's not clear. Well, that's important, though, because it wasn't, if it's not clear to us, it wasn't clear to the Board. Well, but the Board found that they abandoned the groups. It didn't say it's not clear. It said you abandoned them. And I, that's my, that's my difficulty with your position is I'm having trouble finding in this brief an abandonment as opposed to a confusion. Well, put your stuff in the Board's position. It's unclear what they're arguing, which groups they're advancing. And it has to come down on one side or the other. No, it doesn't have to, it doesn't. It can just say, so we'll assume you're raising the original groups and we'll address the IJ's decision. And my guess is, based on this record, more likely than not saying there was substantial evidence to support the IJ's decision. It's the, it's the Board's absence of addressing the IJ's decision in the alternative that causes the problem for us, I think. I can see that. And I don't disagree that the Board could have been clearer in doing that. But at this juncture, our position is that the Board did not make a legal error when it was confronted with this arguably ambiguous, shifting, and evanescent social group structure to decide, looks at it, can't make heads or tails of it, and said, we don't know what they're, we don't know what they're advancing here. It looks like they've abandoned them. Yeah, I read the briefing and read the government's briefing before the BIA. And as I recall, the government didn't argue that the groups were abandoned, did it? No. No. And so the BIA arrived at this conclusion. It wasn't a, so in order to say that you're not at fault, you didn't lead the BIA into error here. They apparently, if they got to error, they did it all on their own. No. And you're right. I mean, the government briefs before the Board usually are boilerplate. They really don't say, they really don't say much. But they addressed the, they said you should uphold the IJ's decision because it was based on substantial evidence. That's, that's what they argued. And had the BIA simply done that, we wouldn't be confronting this issue. Well, the BIA would have had to, that's right. I mean, so. So what kind of taking you over the very same ground? Let me ask you, since you just have one minute left, is there anything else you'd like to raise? No, I think, I think we've covered the issues and. There's one. There's one. And we've covered it. Is there anything else you'd like to raise? Well, with, with respect to Cat, there's, we just argued that there's no compelling evidence of future torture, and there's been no interest in the family since then. So other than that, unless the Court has any further questions, I think I've covered my ground. I wanted to make sure you had an opportunity to have some time left for that. But, Gwen, do you have other questions? Oh, about the, oh, can I just talk about the mediation? Sure. Yeah. Counsel sent me an email on Monday about asking about mediation, and I haven't had any time to confer. I mean, if, if after the argument, you know, if they want to submit a request for closure or something, I would be happy to entertain that. But at this stage of the game, it's, it's, you know, thank you. We'll let you work that out between the two of you. Not a problem. We've been busy this week, too. Thank you, Your Honor. Thank you for your argument. You have a little bit of time left. Okay. Your Honor, what you asked is if, if the opportunity was fairly teed up for, and we argue that it was. You, we've said multiple times back and forth, it seems that the BIA, the brief that was submitted might have been unartful, but at its core, was the BIA aware of what was going on and what was appealed? Or, I'm sorry, was the immigration judge aware of what was going on and what was going to be appealed? This court has held in S. Young v. Holder, that although a drafting might be imprecise, the challenges to the immigration judge were sufficiently raised. Using that same reasoning, we, we believe that the challenges were sufficiently raised. Your Honor, you talked about how, you, that you actually think those new questions may have been a little bit of maybe re-emphasis of the PSGs that were already submitted. And, and we, we believe that's correct. Throughout testimony and declarations, the petitioners made clear that they were witness, that they had witnessed Mr. Morales-Gamayas kidnapping and immediately reported it to the police, indicating that they were, how they aided was through, through reporting and being a witness. The petitioners also made clear that they fear harm from the cartel because Mr. Morales-Gamayas was a police officer and that they had reported the kidnapping to authorities. Again, again, saying what that, what it was that they were scared of. Given, given all of that has been argued and the questions that I have attempted to answer for you guys today, we respectfully argue that the evidence does show that this was fairly teed up. The immigration judge knew, had a full record of everything that was being challenged, I mean, everything that was being argued, and it was properly challenged before the BIA. And with that, we rest. Thank you. Hold on just one minute. More questions? No more questions. Thank you both for your advocacy. We appreciate it very much. We'll take that matter under advisement. Milgevich has been submitted. Grone has submitted. So we'll go on to the next case on.
judges: CHRISTEN, NGUYEN, HURWITZ